Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2524 | **DATE** | 8/13/2002 |
| **CASE TITLE** | First Graphics, Inc. Vs. M.E.P. CAD, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, M.E.P.'s motion for attorneys' fees (96-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 1 4 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 103 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 02 AUG 13 PM 6:19 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AUG 14 2002

| | |
|---|---|
| FIRST GRAPHICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 00 C 2524 |
| ) | |
| M.E.P. CAD, INC., ) | |
| ) | AUG 14 2002 |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

First Graphics, Inc. sued M.E.P. Cad, Inc., contending that M.E.P.'s AutoSprink software infringed three of its patents. On March 13, 2002, the Court granted summary judgment in M.E.P.'s favor, finding that First Graphics' patents were not infringed. *See First Graphics, Inc. v. M.E.P. Cad, Inc.*, No. 00 C 2524, 2002 WL 389535 (N.D. Ill., May 13, 2002). This case is now before the Court on M.E.P.'s motion for attorneys' fees pursuant to 35 U.S.C. § 285.

### Background

First Graphics is the owner of U.S. Patent Nos. 5,227,983, 5,557,537, and 5,808,905, which cover methods and apparatus for designing distribution systems for buildings (*e.g.*, plumbing, electrical, sprinkling, or ventilation systems) using computer software. M.E.P.'s AutoSprink software is a computer-aided design program for fire sprinkler systems. First Graphics sued M.E.P. claiming that AutoSprink, and more particularly the "3-point wizard" feature of AutoSprink, infringes its patents.

On March 13, 2002, the Court granted summary judgment of non-infringement in favor of M.E.P. As the Court concluded in the claim construction phase of this proceeding, the word "comply" in the First Graphics patents means "to act in accordance with standards or requirements." *First Graphics, Inc. v. M.E.P. Cad, Inc.*, No. 00 C 2524, 2001 WL 755138, at *6. M.E.P. argued on summary judgment that AutoSprink does not electronically design a layout "to comply" – *i.e.*, act in accordance – with the requirements of a building standard, a required claim element. *See, e.g.*, U.S. Patent No. 5,227,983, col. 18, ll. 17-23. The Court agreed, finding that AutoSprink does not automatically design a layout in accordance with building standards or requirements. Instead, it is the software user that produces a building-appropriate layout – not the program. The program itself makes no independent decisions to ensure compliance with building standards, but instead relies on inputs from the user. The Court accordingly entered a finding of non-infringement in favor of M.E.P. *See, e.g., Watts v. XL Systems, Inc.*, 232 F.3d 877, 884 (Fed. Cir. 2000)(the absence of a single claim element or its equivalent precludes a finding of infringement).

On March 25, 2002, First Graphics filed a motion for reconsideration and requested that it be permitted to present an in-court demonstration of AutoSprink. The Court granted this request and viewed the demonstration on April 19, 2002. After reviewing the AutoSprink demonstration and the parties' written submissions, the Court denied First Graphics' motion for reconsideration.

**Discussion**

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in a patent infringement lawsuit. Conduct which

may serve as the basis for an award of attorneys' fees includes "willful infringement, inequitable conduct before the [Patent Office], misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). An exceptional case pursuant to § 285 must be established by clear and convincing evidence. *Id.* In general, an attorneys fees award is appropriate only if "it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990)(quoting *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987)).

In support of its claim for attorneys' fees, M.E.P. argues that this case is "exceptional" within the meaning of 35 U.S.C. § 285 because First Graphics (1) instituted and prosecuted a lawsuit it knew was meritless; and (2) engaged in various instances of misconduct, including threatening the industry that purchasing AutoSprink would result in litigation; serving subpoenas on M.E.P.'s customers; and obtaining information from M.E.P. representatives while they were represented by counsel. For the following reasons, the Court concludes that M.E.P. has failed to demonstrate an exceptional case by clear and convincing evidence.

I.  *Instituting and Prosecuting A Meritless Lawsuit*

In support of its argument that First Graphics instituted and prosecuted a meritless lawsuit, M.E.P. first argues that First Graphics failed to conduct a reasonable investigation prior to filing suit. According to M.E.P., if First Graphics had investigated its claim and obtained a copy of AutoSprink prior to filing suit, "it would have been immediately apparent that there was no infringement." M.E.P.'s Motion for Fees at 9. But First Graphics has provided evidence that it did in fact perform a pre-filing investigation of its case: it obtained and reviewed a demo-copy

-3-

of AutoSprink and informational materials about the program, and it procured two opinion letters construing the patent claims and comparing those claims to the alleged infringing device. *See Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1073 (Fed. Cir. 2002) (attorney who filed patent infringement action must compare the accused device with patent claims). It also provides evidence that M.E.P. refused to provide, until compelled to do so during discovery, a fully-functioning copy of AutoSprink. Based on this evidence, the Court concludes that although we ultimately found in M.E.P.'s favor, First Graphics undertook a reasonable pre-filing inquiry.[1] *See, e.g., Hoffmann-LaRoche, Inc. v. Invamed, Inc.*, 213 F.3d 1359 (Fed. Cir. 2000)(plaintiffs conducted reasonable pre-filing inquiry that suggested patents were infringed although plaintiff later voluntarily dismissed claim for lack of merit).

M.E.P. next attempts to establish that First Graphics "knew" it had filed a frivolous lawsuit by pointing to statements made by the company during the pendency of its patent application at the Patent Office. During the application process, First Graphics attempted to distinguish its patents from prior art by representing to the Patent Office that, unlike the patented software, the prior art did not "compare ... [the] layout to determine whether or not it complies with a standard or even whether or not it will work." M.E.P.'s Motion for Fees, Exhibit A. First Graphics further stated to the Patent Office that its patented invention evaluates a "system's compliance to a selected standard such as a building code." *Id.* M.E.P. now argues

---

[1] In its Reply, M.E.P. suggests that First Graphics should have known that it could purchase a fully-functioning $6,000 copy of AutoSprink, use it, and then return it for a refund. M.E.P.'s Reply in Support of Motion for Fees at 2. In support of its argument, M.E.P. attaches an AutoSprink advertisement that includes this money-back guarantee in fine print. However, M.E.P. has provided no evidence as to when and how this advertisement was circulated, and we decline to find that First Graphics should have availed itself of this option.

-4-

that First Graphics "knew" that AutoSprink did not infringe its patents because AutoSprink "does not compare, determine, or evaluate anything – it just draws the design entered by the user," and that such activity was disclaimed by First Graphics to the Patent Office. M.E.P.'s Motion for Fees at 4. However, M.E.P. misstates First Graphics' litigation position – it argued that AutoSprink did indeed compare and evaluate data via the "3-point wizard" feature. Though we ultimately found in its favor on this issue, M.E.P. is not entitled to attorneys' fees simply because its argument prevailed.

M.E.P. finally argues that First Graphics acted in bad faith because it refused to accept a settlement offer from M.E.P. or agree with M.E.P.'s position of non-infringement. As First Graphics correctly notes, "it is not the general practice of an advocate to blithely follow the statements of his opponent as to the adequacy of his own case." *London v. Carson Pirie Scott & Co.*, No. 85 C 9712, 1993 WL 276778 (N.D. Ill., July 20, 1993). Further, simply because M.E.P. considered its settlement offer to be favorable does not make it so, and the Court does not find that First Graphics' rejection of the offer evidences bad faith. M.E.P.'s arguments on this score are rejected.

II.     *Misconduct During Litigation*

M.E.P. also argues that an attorneys' fees award is warranted because First Graphics engaged in various misdeeds prior to and during the pendency of this lawsuit. M.E.P. first points to a "letter to the editor" from First Graphics' counsel, Arne Olson, that was published in FPC Magazine – a leading trade publication. The letter appeared prior to the commencement of this lawsuit and stated, in part:

> We recently read an article published in the May 1999 edition of *FPC/Fire Protection*

> *Contractor* about the AutoSprink fire sprinkler CAD computer program by M.E.P. CAD. ... We are writing simply to inform you that [First Graphics] is the owner of United States Patent Nos. 5,227,983; 5,557,537; and 5,808,905. These patents cover computer programs that automatically design complete fire sprinkler systems.

M.E.P.'s Motion for Fees, Exhibit C. M.E.P. argues that this letter constituted a threat to the industry to stay away from AutoSprink and asserts, citing *International Industries and Developments v. Farbach Chemical Company*, 241 F.2d 246 (6th Cir. 1957), that this threat alone warrants a fee award. In *International Industries*, the plaintiff sent 8,000 letters to manufacturers, dealers, and retailers of dip-type liquid silver cleaners. *Id.* at 248. The letter informed its recipients that the plaintiff held patent rights in these type of cleaners and listed the manufacturers who were licensed to produce the product. *Id.* The letter concluded by asserting that "any persons, firms or corporations manufacturing, advertising, selling or distributing dip-type silver cleaning liquids or powders in violation [of the patents] do so at their peril. Any infringement will be liable to prosecution." *Id.* The Sixth Circuit found that the average recipient of this letter would understand it to mean that he would be sued if he sold silver cleaners manufactured by anyone other than the listed entities. *Id.* The Court's interpretation was supported by evidence that numerous customers asked the defendant whether it was "licensed" under plaintiff's patent, and many ceased purchasing the defendant's products after receiving the letter. *Id.*

As an initial matter, we do not agree that *International Industries* stands for the proposition that any communication to the trade as a whole warrants an attorneys' fee award. Indeed, the District Court in *International Industries* based its fee award also on evidence that the plaintiff never examined the defendant's competing product prior to or after filing suit; had no

good faith basis for filing the suit; and misled the court as to the existence of issues of fact in response to a motion for summary judgment. *See International Industries and Developments v. Farbach Chemical Company*, 145 F. Supp. 34 (S.D. Ohio 1956), *aff'd*, 241 F.2d 246 (6th Cir. 1957). Moreover, the letter in this case is distinguishable from the *International Industries* letters. In this case, the letter was not sent directly to any purchasers or distributors of AutoSprink, and it contained no overt threat that any buyer of AutoSprink would be sued. Moreover, unlike the defendant in *International Industries*, M.E.P. has offered no evidence that any of its customers ever saw or were troubled by the letter, or that the letter had any impact on its business at all.

M.E.P. additionally argues that First Graphics' issuance of subpoenas to four of its customers constitutes misconduct sufficient to support a fee award. Though the Court ultimately quashed these subpoenas, we do not conclude that their mere issuance creates an exceptional case. The subpoenas were limited in number and targeted only those companies that M.E.P. itself identified through "testimonials" in its marketing materials.

M.E.P. finally asserts that First Graphics attempted to procure information directly from M.E.P. representatives after this lawsuit had been filed. Specifically, M.E.P. asserts that David Hoeft worked the M.E.P. booth at a National Fire Protection Association ("NFPA") trade show in Colorado in May 2000 and was approached by a gentleman who asked questions about AutoSprink. Hoeft Affidavit, ¶¶ 4, 5. Hoeft further asserts that he met with First Graphics' owner Charles Hines and attorney Arne Olson in June 2000, and that Olson "seemed familiar" at that time. Hoeft Affidavit, ¶ 7. Hoeft states that he believes that it was Olson who approached him in Denver. *Id.* In response, Olson provides an affidavit to the effect that he has never

attended an NFPA trade show and that he was in Chicago on the days in question. Olson Affidavit, ¶ 17. Based on the evidence provided, the Court does not find that M.E.P. has met its evidentiary burden of showing litigation misconduct by clear and convincing evidence.

In short, the Court determines that M.E.P. has failed to demonstrate by clear and convincing evidence that this case warrants "exceptional" status. Accordingly, we deny M.E.P.'s motion for fees pursuant to 35 U.S.C. § 285.

## Conclusion

For the foregoing reasons, M.E.P.'s Motion for Attorneys' Fees [item # 96-1] is denied.

Date: August 13, 2002

MATTHEW F. KENNELLY
United States District Judge

-8-